**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leo India Films Limited, | No. CV-19-04803-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| GoDaddy.com LLC, | |
| Defendant. | |

Pending before the Court is Defendant GoDaddy.com LLC's ("GoDaddy") motion to strike, or in the alternative, motion to dismiss Plaintiff Leo India Films Limited's ("Leo") First Amended Complaint ("FAC"). (Doc. 84.) The motion is fully briefed and is granted in part.

**I. Background**

GoDaddy is an internet domain name registrar; Leo operates einthusian.tv, a subscription website streaming Indian and other South Asian films. About a decade ago, Leo entered into two agreements ("Agreements") with GoDaddy, wherein Leo registered the einthusan.tv domain name ("Domain") with GoDaddy and agreed to GoDaddy's Universal Terms of Service. In July 2019, GoDaddy suspended the Domain. Thus, for a time, Leo's subscribers were unable to access the Domain and Leo was unable to transfer it to a new domain registrar. Leo soon brought this lawsuit, alleging contract and tort claims against GoDaddy based on its suspension of the Domain. Thus far, the parties have already litigated one motion to dismiss. Now, without first seeking leave from the Court,

Leo filed the FAC, adding allegations to support new theories under preexisting claims and a new claim.

## II. Motion to Strike

On its own or upon timely motion by a party, the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a motion to strike "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "Motions to strike are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Contrina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1774, 1182 (S.D. Cal. Mar. 19, 2015) (internal quotation and citation omitted). Courts generally will not grant a motion to strike unless the movant can show that the matter at issue has "no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Id.*

### A. Unauthorized Amended Pleading

GoDaddy argues that the Court should strike the FAC because Leo filed it without first obtaining the Court's permission. Leo argues that leave to amend was not required because "[t]he Court . . . specifically directed [it] to file the amended complaint." (Doc. 89 at 4.) But this argument is based on a misunderstanding of the Court's scheduling order. During the November 11, 2022 scheduling conference, the Court asked Leo's counsel whether he anticipated adding parties or amending pleadings. Counsel responded that he anticipated doing so. The Court asked counsel how much time he thought he needed and set the deadline to add parties and amend pleadings accordingly. (Doc. 91 at 26.) Counsel appears to have misinterpreted that colloquy as the Court preauthorizing the filing of an amended complaint. But the Court did not preauthorize such a filing by setting a deadline for amendments. Instead, it asked counsel how much time he need in order to ensure that the deadline for amending pleadings was set far out enough so that Leo's anticipated motion for leave to amend would be governed by the ordinary standard in Federal Rule of

Civil Procedure 15, rather than the heightened standard in Rule 16.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-09 (9th Cir. 1992).  Leo was required to seek leave to amend before filing the FAC .

Nevertheless, striking the FAC would not avoid the expenditure of time and money that arises from litigating spurious issues. Instead, striking the FAC likely would lead Leo to file a motion for leave to amend, bringing everyone to this same place at a later time and after incurring additional expense.  What's more, GoDaddy has not been prejudiced by Leo's unauthorized amended pleading because the alternative arguments GoDaddy raises in its motion for dismissal would have been raised as futility arguments in opposition to a motion for leave to amend, had Leo filed one.  Striking the FAC now, after the parties have already briefed whether the FAC states a plausible claim to relief, would increase expense and delay, undermining the purpose behind Rule 12(f) in particular, and the Federal Rules more generally.  *See* Fed. R. Civ. P. 1. The Court therefore denies GoDaddy's motion to strike.

### B. Punitive Damages

GoDaddy asks the Court to strike Leo's demand for punitive damages under Rule 12(b)(6). But punitive damages is a remedy, not a claim, and courts in the Ninth Circuit—including this Court—tend to read Rule 12(b)(6) as applying only to claims, not to remedies. *See MCI Commc'ns Servs. Inc. v. Contractors W. Inc.*, No. CV-15-02558-PHX-DGC, 2016 WL 795861, at *3 (D. Ariz. Mar. 1, 2016). Instead, Rule 12(f) would apply. *Id.* GoDaddy has not raised a Rule 12(f) argument, perhaps because the Ninth Circuit has declined to strike punitive damages requests under Rule 12(f) before. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010). For this reason, Court denies GoDaddy's motion to strike punitive damages.

### III. Motion to Dismiss

To survive motion to dismiss under Rule 12(b)(6), a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The task when ruling on a motion to dismiss "is to

evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 680, and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2008).

**A. Count II**

Count II presses a claim for a breach of the implied covenant of good faith and fair dealing under both a contract theory (which is not challenged here) and a tort theory (which is). In Arizona, "a party may bring an action in tort claiming damages for breach of the implied covenant of good faith, but only where there is a 'special relationship between the parties arising from elements of public interest, adhesion, and fiduciary responsibility.'" *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 29 (Ariz. 2002) (quoting *Burkons v. Ticor Title Ins. Co. of California*, 813 P.2d 710, 720 (Ariz. 1991)). GoDaddy argues that Leo fails to allege facts supporting all three elements.

Leo alleges that the Agreements were contracts of adhesion because they "were offered on a take it or leave it basis" and included a liability limitation. (Doc. 89 at 6.) "A contract of adhesion offers goods or services on essentially a take it or leave it basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract." *Duenas v. Life Care Centers of Am., Inc.*, 336 P.3d 763, 771 (Ariz. Ct. App. 2014) (quoting *Broemmer v. Abortion Servs. of Phoenix, Ltd.*, 840 P.2d 1013, 1015 (Ariz. 1992)) (internal quotation marks omitted). Although Leo's allegation goes to the take-it-or-leave-it basis, Leo does not allege that it could not obtain web registration services from another vendor; thus, the element of adhesion is not present.

Next, fiduciary duty. A fiduciary duty requires something more than an "arm's length relationship" and instead must rise to a "peculiar reliance in the trustworthiness of another" or "great intimacy, disclosure of secrets, [or] intrusting of power." *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 335 (Ariz. Ct. App. 1996) (quoting *Stewart v. Phoenix Nat'l Bank*, 64 P.2d 101, 106 (Ariz. 1937) and *Rhoads v. Harvey Publications, Inc.*, 700 P.2d 840, 847 (Ariz. Ct. App. 1984)). A fiduciary holds "superiority of position" over the beneficiary, which "may be demonstrated in material aspects of the transaction at issue by a 'substitution of the fiduciary's will.'" *Id.* (quoting *Herz & Lewis, Inc. v. Union Bank*, 528 P.2d 188, 190 (Ariz. Ct. App. 1974)). Commercial contracts do not create fiduciary relationships unless "one party agrees to serve in a fiduciary capacity." *Urias v. PCS Health Systems, Inc.*, 118 P.3d 29, 35 (Ariz. Ct. App. 2005).

Leo does not allege that GoDaddy agreed to serve in a fiduciary capacity under the Agreements, both of which are commercial contracts. Leo alleges GoDaddy assumed a fiduciary duty by "seizing the Domain without notice," thereby "assum[ing] responsibility for [Leo's] financial welfare, and all concurrent duties therewith." (Doc. 89 at 7.) But this concerns GoDaddy's actions taken after the parties entered into the Agreements and not the substance of the Agreements themselves. Leo cites no law supporting the proposition that a party's actions taken after agreeing to an arm's-length commercial contract can create a fiduciary duty. Leo thus fails to allege facts to support the existence of a fiduciary relationship.

Finally, public policy. In general "Arizona law recognizes a special relationship between an insurance company and an insured. . . . but Arizona courts 'have been reluctant . . . to extend the tort action beyond the insurance setting[.]'" *Thakkar v. Honeywell Int'l, Inc.*, 728 F. App'x 611, 611 (9th Cir. 2018) (quoting *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1040 (Ariz. 1985)). So reluctant, in fact, that more intimate relationships than the one here (domain registrar and registrant) have not received special relationship status. *See id.* (employer and employee); *Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375, 1385 (Ariz. Ct. App. 1994) (same); *Bennett v. Pima Cnty. Cmty. Coll. Dist.*,

No. 2 CA-CV 2016-0019, 2016 WL 6406435, at *13 (Ariz. Ct. App. Oct. 28, 2016) (governmental educational institution and its students); *Simmons v. Mobil Oil Corp.*, 29 F.3d 505, 512 (9th Cir. 1994) (franchisor and franchisee, even with a disparity in bargaining power); *Lansburg v. Fed. Home Loan Mortg. Corp.*, No. 2:11-CV-1529-HRH, 2016 WL 5931030, at *7 (D. Ariz. Oct. 12, 2016) (borrower and lender); *Lockerby v. Sierra*, 535 F.3d 1038, 1043 (9th Cir. 2008) (no per se special relationship between attorney and client); *see also Wilson v. PNC Mortg.*, No. 1 CA-CV 14-0024, 2015 WL 448601, at *9 (Ariz. Ct. App. Feb. 3, 2015) (finding—for the only time—a special relationship between bank and its customer because the bank acted as the customer's financial advisor for 23 years and the customer relied on the bank's advice). It is implausible that the public policy of Arizona would deem the registrar-registrant relationship special when it has denied that status to far more intimate relationships.

In sum, although Leo argues that the registrar-registrant relationship is a special relationship, it does not allege facts plausibly establishing such a special relationship. Nor does Leo cite cases supporting the existing of a special relationship between registrar and registrant. Claim II cannot support a tort theory of the breach of the implied covenant of good faith and fair dealing.

**B. Count IV**

In the original complaint, Leo pressed a claim seeking a declaratory judgement of substantive unconscionability, which survived a motion to dismiss for failure to state a claim. That theory of unconscionability concerns the actual terms of the contract and the relative fairness of the parties' obligations. *Pac. Am. Leasing Corp. v. S.P.E. Bldg. Sys., Inc.*, 730 P.2d 273, 280 (Ariz. Ct. App. 1986). The FAC adds another, independent theory of unconscionability, procedural unconscionability, which concerns the terms of the contract. *Id.* Courts consider several elements: "(1) age, (2) education, (3) intelligence, (4) business acumen and experience, (5) relative bargaining power, (6) who drafted the contract, (7) whether the terms were explained to the weaker party, (8) whether alterations in the printed terms were possible, (9) whether there were alternative sources of supply for

the goods in question." Maxwell v. Fid. Fin. Servs., Inc., 907 P.2d 51, 58 (Ariz. 1995) (quoting *Johnson v. Mobile Oil Corp.*, 415 F. Supp. 264, 268 (E.D. Mich. 1976)) (numeration added).

As a threshold matter, Leo asks this Court to "decline to conduct a merits-based inquiry into this claim until discovery has been allowed to develop more fully." (Doc.89 at 11.) But this misses the point. To be entitled to discovery on a claim, a party must state a claim upon which relief can be granted. Therefore, if Leo has not pled sufficient facts to support its claim of procedural unconscionability, it does not get to conduct discovery on this theory of unconscionability. Moreover, several of Leo's arguments about procedural unconscionability relate entirely to the substance of the agreements, which Leo entered into the record. Discovery is not needed to evaluate those arguments.

Leo argues that several of its allegations support its claim for procedural unconscionability. They do not. To start, Leo argues that it alleged the agreements were contracts of adhesion. The Court rejected the adhesion argument above, explaining that Leo did not allege it could not obtain the requested services from another vendor, a requite feature of an adhesive contract.

Leo next alleges that a "majority" of the oppressive terms of the Agreements were not printed in conspicuous font. (Doc. 76 at 11.) This is not plausible. For starters, the text of the Agreements appears in a sans-serif font of reasonable size in the body of the Agreements, not some form of Webdings in microscopic type buried in a footnote. (Docs. 76-1, 76-2.) Indeed, the Court was able to read the Agreements in their entirety—without squinting or donning reading glasses—on a standard computer monitor. What's more, the agreements emphasize at least two of the complained-of clauses.  The limitation of liability clause appears in all capital letters under a numbered, bold, and all-caps header "**13. LIMITATION OF LIABILITY**[.]" (Doc. 76-1 at 9.) The clause concerning GoDaddy's authority to suspend domain names appears offset in numbered paragraphs underneath a header "**7. SUSPENSION OF SERVICES; BREACH OF AGREEMENT**[.]" (Doc. 76-2.) Such attention-grabbing typefaces and formatting cannot sustain an allegation of

inconspicuousness.

Leo argues that GoDaddy did not explain the terms of the Agreements prior to execution. But Leo does not allege that it asked for an explanation or that it was confused by any of the terms, and so this allegation does not support a claim for procedural unconscionability. *Tinker v. CrimShield, Inc.*, No. CV-22-00339-PHX-DLR, 2022 WL 4970223, at *3 (D. Ariz. Oct. 4, 2022) (holding that a plaintiff must "identify facts suggesting unfair surprise, mistake or ignorance of important facts, or other aspects of the transaction that would justify invalidating the arbitration provision based on procedural unconscionability").

Next, Leo contends that the Agreements were unconscionable because of the clauses granting GoDaddy unilateral authority to make modifications to the Agreements. But this goes to substantive unconscionability, which is not contested here.

Finally, Leo alleges that GoDaddy drafted the Agreements. This allegation standing alone cannot sustain a claim of procedural unconscionability, *see id.*, especially when Arizona law presumes that the parties read their agreements, *Coup v. Scottsdale Plaza Resort, Ltd. Liab. Co.*, 823 F. Supp. 2d 931, 949 (D. Ariz. 2011). Leo does not plead sufficient factual allegations to sustain a plausible claim for procedural unconscionability.

**IT IS ORDERED** that GoDaddy's motion to strike and motion to dismiss (Doc 84) is **GRANTED IN PART**:

1. Count II, to the extent it is predicated on a tort theory of the breach of the implied covenant of good faith and fair dealing, is **DISMISSED**.

2. Count IV, to the extent it is predicated on a theory of procedural unconscionability, is **DISMISSED**.

3. GoDaddy's motion is otherwise **DENIED**.

Dated this 31st day of May, 2023.

Douglas L. Rayes
United States District Judge

- 8 -