WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leo India Films Limited,<br><br>Plaintiff,<br><br>v.<br><br>GoDaddy.com LLC,<br><br>Defendant. | No. CV-19-04803-PHX-DLR<br><br>**ORDER**<br><br>**[UNDER SEAL]** |

Before the Court is Defendant's motion for summary judgment and accompanying memorandum (Docs. 146, 147). The motion is fully briefed.[1] (Docs. 154, 166.) For the following reasons, the Court grants the motion.

**I.  Background**

Defendant GoDaddy.com LLC ("GoDaddy") is a domain name registrar. (Doc. 19 at 2.) Plaintiff Leo India Films Limited d/b/a Einthusan.TV ("Leo") contracted with GoDaddy to register the domain name "Einthusan.tv" ("Domain"). (*Id.* at 4.) The website associated with the Domain distributes "licensed video content by artists from India and other South Asian countries." (Doc. 76 ¶ 6.)

GoDaddy requires all domain registrants to agree to its Universal Terms of Service ("UTOS") and Domain Name Registration Agreement ("DNRA"). (Doc. 19 at 2–3.) Leo

---

[1] Oral argument is denied because the motions are adequately briefed, and oral argument will not help the Court resolve the issues presented. See Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

agreed to both the UTOS and DNRA (collectively, "Agreements") when it originally registered the Domain in 2013 and when it renewed the Domain registration in 2013, 2015, and 2016. (*Id.* at 4; Doc. 19-1 at 61–65.) The UTOS provides that GoDaddy may

> deny, cancel, terminate, suspend, lock or modify access to (or control of) any Account or Services (including the right to cancel or transfer any domain name registration) for any reason (as determined by [GoDaddy] in its sole and absolute discretion), including but not limited to the following . . . (v) to comply with requests of law enforcement, including subpoena requests, . . . (viii) to avoid any civil or criminal liability on the part of [GoDaddy.]

(Doc. 19-1 at 21.) The DNRA has a materially identical provision. (Doc. 20-3 at 16.)

On July 9, 2019, GoDaddy suspended the Domain in response to a letter ("Notice") from the Office of Inspector General of Policy, Maharashtra Cyber in Mumbai, India ("MCP"). (Docs. 13-2 at 74; 19 at 5; 19-1 at 67.) The Notice stated that the website associated with the Domain was "infringing copyrights and engaged in piracy," and it directed GoDaddy to "immediately desist from providing services" associated with the Domain, under threat of criminal liability. (Doc. 19-1 at 70–91.) GoDaddy notified Leo of the investigation and suspension of its Domain and directed Leo to contact the MCP for further information. (*Id.* at 67; Doc. 147-3 at 7.)

Leo made multiple, unsuccessful attempts to contact the MCP. (Doc. 13-2 at 80–85.) It informed GoDaddy representatives that it was unable to reach the MCP and repeatedly requested GoDaddy allow it to transfer the Domain. (*Id.*) GoDaddy did not respond to these requests. (*See id.* at 80.) During the suspension, Leo entered into agreements with three other domain registrars for other "Einthusan" domain names—Cloudflare, Inc. ("Cloudflare"), Gandi.net ("Gandi"), and easyDNS Technologies Inc. ("easyDNS")—each of which had similar provisions to the challenged provisions of the Agreements. (Docs. 147-7 at 11–12 (Gandi); 147-9 at 8–9; 147-10 at 4–5 (Cloudflare); 147-11 at 8; 147-12 at 3 (easyDNS); *see also* 147-15 at 2–3 (discussing Leo's domain registrations).) Ninety days after the suspension, GoDaddy unlocked the domain, pursuant to its standard procedure for law enforcement requests. (Doc. 147-3 at 13.)

The operative first amended complaint ("FAC") asserts four counts: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing, sounding in tort or alternatively, in contract; (3) tortious interference with contract and business relations; and (4) procedural and substantive unconscionability. (Doc. 76 at 7–12.) The Court partially granted GoDaddy's motion to dismiss the FAC, dismissing the tort-based implied covenant claim and the procedural-unconscionability claim. (Doc. 106 at 4–7.) GoDaddy now moves for summary judgment on all remaining claims or alternatively, partial summary judgment on the issue of damages. (Doc. 146.)

## II.     Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the non-moving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (quotation omitted). The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts": it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation and citation omitted). "Even where there are some factual issues raised, summary judgment is appropriate if the totality of the undisputed facts is such that reasonable minds could not

differ on the resolution of the factual question." *Chesney v. United States*, 632 F. Supp. 867, 869 (D. Ariz. 1985).

**III.   Analysis**

GoDaddy makes several arguments in support of its summary judgment motion. First, it asserts that it is entitled to summary judgment on the contract claims because they are precluded by the Agreements themselves, and the Agreements are enforceable because they are not substantively unconscionable. Then it argues that section 230 of the Communications Decency Act bars the tortious-interference and implied-covenant claims. It also argues that the economic loss rule bars Leo's tortious-interference claim. Even if neither defense bars the tortious-interference claim, GoDaddy claims Leo nonetheless fails to raise a triable issue of fact on several essential elements of its tortious-interference claim. GoDaddy requests that, if the Court finds a triable issue of fact on any of the claims, the Court enforce the UTOS, which includes a provision limiting GoDaddy's liability.

The Court first analyzes whether the Agreements are unconscionable then proceeds to analyze the breach-of-contract and implied-covenant claims separately. Lastly, the Court considers whether Leo raises a triable issue of fact on its tortious-interference claim. Because Leo's claims fail as a matter of law, the Court does not reach GoDaddy's affirmative defenses or other arguments.

**a.   The Agreements are not substantively unconscionable.**

Leo claims that the Agreements' provisions giving GoDaddy the authority to suspend or lock a domain and disallow a domain transfer in its sole discretion for any reason are unconscionable, and therefore, unenforceable. (Doc. 154 at 14.) GoDaddy argues that these provisions are standard in the industry and are not exceedingly harsh or one-sided. (Doc. 147 at 17.)

"Whether a contract is unconscionable presents a question of law[.]" *Aerial Funding LLC v. Van Sickle*, No. 1 CA-CV 19-0543, 2020 WL 6140700, at *3 (Ariz. Ct. App. Oct. 20, 2020). "Arizona law requires that the parties be allowed to present evidence of unconscionability," as they have done here. *Sw. Pet Prods., Inc. v. Koch Indus., Inc.*, 107

F. Supp. 2d 1108, 1112 (D. Ariz. 2000). "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Id.* at 1113. "Substantive unconscionability must be determined at the time of contracting," so the Court looks to "the commercial setting at the time the parties entered into the contract." *Id.* "[S]ubstantive unconscionability focuses on the *terms* of the contract and seeks to determine whether they are 'so one-sided as to oppress or unfairly surprise an innocent party.'" *Id.* (quoting *Maxwell v. Fidelity Fin. Servs., Inc.*, 907 P.2d 51, 58 (Ariz. 1995)).

A showing that a contract's terms are "standard in the industry" may support a finding that a contract is not substantively unconscionable. *See id.* at 1114. In *Koch Industries*, the contract was not substantively unconscionable where there was evidence that the plaintiff entered into a prior agreement with the defendant with the same terms and "that [the plaintiff] signed, and continues to sign, contracts with other vendors with similar or identical [provisions]." *Id.* The plaintiff's ignorance of the terms was irrelevant to the analysis. *Id.* The court emphasized that "[s]tandardized contracts are a reality of today's business arena and a necessary component of the fast-paced world of commerce." *Id.*

Here, the evidence shows that the challenged terms are standard in the industry. Like the plaintiff in *Koch Industries*, Leo repeatedly agreed to the very same provisions of the Agreements that it now argues are unconscionable. (Doc. 19-1 at 61–65.) Leo also signed several other contracts with materially identical provisions with other domain name registrars. (Docs. 147-7 at 11–12; 147-9 at 8–9; 147-10 at 4–5; 147-11 at 8; 147-12 at 3.) And Leo itself includes similar provisions in its terms of service. (Doc. 147-6 at 1, 3–5.) Leo's argument that it would not have entered the Agreements if it knew of the provisions is irrelevant, as "failure to read does not support a finding of unconscionability." *Koch Indus.*, 107 F. Supp. 2d at 1114.

Even assuming the terms aren't industry standard, the Agreements are not so "monstrously harsh" or "shocking to the conscious" as to support a finding of unconscionability. *Van Sickle*, 2020 WL 6140700, at *3. The terms of the contract allow GoDaddy to protect its own interests, as well as the interests of its registrants, by locking

or suspending a domain and/or disallowing its transfer to avoid criminal liability. This term isn't one-sided or unfairly surprising; reasonable people want to avoid criminal liability.

> Courts should not assume an overly paternalistic attitude toward the parties to a contract by relieving one or another of them of the consequences of what is at worst a bad bargain . . . and in declaring the [Agreements] at issue here unconscionable, we would be doing exactly that.

*Nelson v. Rice*, 12 P.3d 238, 243 (Ariz. Ct. Ap. 2000) (quoting *Pac. Am. Leasing Corp. v. S.P.E. Bldg. Sys., Inc.*, 730 P.2d 273, 280 (Ariz. Ct. App. 1986)).[2]

### b. Leo's breach-of-contract claim fails because the Agreements explicitly authorize GoDaddy to act as it did.

GoDaddy asserts that it is entitled to summary judgment on both contract claims because it exercised its express contractual rights in suspending and locking the Domain. (Doc. 147 at 15.) A "contract claim fails as a matter of law" where "the clear and unambiguous terms of the" contract "impose no obligation" on the defendant to act in the manner that the plaintiff demands. *Kocharov v. JPMorgan Chase Bank, N.A.*, No. CV-21-02220-PHX-DGC, 2023 WL 7018030, at *7 (D. Ariz. Oct. 25, 2023).

Leo's breach-of-contract claim fails because the action it identified as the breach is expressly authorized by the Agreements. GoDaddy suspended and locked the Domain pursuant to its rights under the Agreements. It does not point to any other term or provision of either the UTOS or the DNRA that GoDaddy allegedly breached. Leo thus "fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. GoDaddy is entitled to summary judgment on the breach-of-contract claim.

### c. Leo's implied-covenant claim fails because no reasonable juror could find that GoDaddy abused its discretion and deprived Leo of its reasonably expected benefit of the bargain.

GoDaddy argues it is entitled to summary judgment on the implied-covenant claim

---

[2] The Court also notes that the provisions of the Agreements that Leo claims are substantively unconscionable are, paradoxically, the same provisions that it claims GoDaddy breached.

- 6 -

because it complied with the express terms of the Agreements and exercised its discretion reasonably. (Docs. 147 at 17; 166 at 10.) Leo responds that GoDaddy breached the implied covenant by exercising its discretion to suspend and lock the Domain where there was no legitimate threat of criminal liability to Leo or GoDaddy. (*See* Doc. 154 at 11–12.) The covenant of good faith and fair dealing "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (Ariz. 2002). "Under Arizona law, '[t]he general rule is that an implied covenant of good faith and fair dealing cannot directly contradict an express contract term.'" *Calhoun v. Allstate Ins. Co.*, No. 21-15837, 2022 WL 1285043, at *1 (9th Cir. Apr. 29, 2022) (alteration in original) (quoting *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. Ct. App. 2022)). But "a party can breach the implied covenant . . . by exercising express discretion in a way inconsistent with a party's reasonable expectations[.]" *Bike Fashion Corp.*, 46 P.3d at 435.

The parties don't dispute that the Agreements authorized GoDaddy to act as it did; rather, Leo argues that GoDaddy abused its express discretion by locking and suspending the Domain. The issue then is whether Leo's expectation that GoDaddy would promptly unlock its Domain to allow transfer at its request was reasonable. Leo argues that its expectation was reasonable because: (1) the Notice was not directly addressed to GoDaddy but instead to an Indian subsidiary of GoDaddy; (2) the Notice was not a "demand" but a "preliminary inquiry"; (3) Leo contacted GoDaddy and notified it that its content was properly licensed and that the website was blocked in India; (4) GoDaddy did not verify the contents of the Notice before taking action; and (5) Leo told GoDaddy of its unsuccessful attempts to contact the MCP or verify the contents of the Notice itself.[3] (Docs.

---

[3] Leo also argues that, as an accredited registrar, GoDaddy acted inconsistently with the Internet Corporation for Assigned Names and Numbers ("ICANN"). (Doc. 165 at 13; *see* Doc. 165-1 at 2.) It is unclear how GoDaddy's agreement with ICANN could be the basis for Leo's reasonable expectation, as Leo is not party to GoDaddy's agreement with ICANN and only became aware of this policy through this litigation. (*See* Doc. 154-1 at 3.) What's more, there is evidence that ICANN's policy did not apply in this instance. (*See* Doc. 13-2 at 87.)

154 at 12–13; 165 at 13.)

None of these facts materially bear on Leo's reasonable expectations. "To determine the parties' reasonable expectations, 'the relevant inquiry will always focus on the contract itself, to determine what the parties did agree to.'" *Two Bros. Distrib. Inc. v. Valero Mktg. & Supply Co.*, 270 F. Supp. 3d 1112, 1128 (D. Ariz. 2017), *aff'd* 769 Fed. App'x 408 (9th Cir. 2019) (quoting *Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986)). The UTOS states that GoDaddy may act "to comply with *requests* of law enforcement," not just *demands*. (Doc. 19-1 at 21 (emphasis added).) In any event, the Notice instructed GoDaddy to "desist" from providing services to Leo and advised GoDaddy that it could be criminally liable, suggesting that the MCP intended to act imminently if GoDaddy did not comply. (*See id.* at 70–71). It makes no difference that the Notice was addressed to a subsidiary of GoDaddy, as the UTOS provides that GoDaddy make take action to protect itself, "its officers, directors, employees and agents, as well as GoDaddy's affiliates[.]" (*Id.* at 21.) Nor does it matter whether GoDaddy or Leo could verify the contents of the Notice. The UTOS states that GoDaddy will act "with or without consideration for whether . . . threatened legal action is . . . with or without merit." (*Id.*) Given the plain language of the UTOS, no reasonable jury could find that Leo's contrary expectation that GoDaddy would unlock the Domain because *Leo* determined there was no true threat of criminal liability was reasonable. GoDaddy is entitled to summary judgment on the implied-covenant claim.

**d. Leo fails to raise a genuine dispute of material fact as to whether GoDaddy committed an improper act, a necessary element of its tortious-interference claim.**

GoDaddy contends that Leo fails to establish three essential elements of its tortious-interference claim, only one of which the Court need analyze here: the improper act element. (Doc. 147 at 23.) Leo responds that GoDaddy's breach of the Agreements and breach of the implied covenant are improper acts sufficient to support its tortious-interference claim. (Doc. 154 at 25.) "A prima facie case of intentional interference requires: (1) existence of a valid contractual relationship, (2) knowledge of the relationship

on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) *that the defendant acted improperly.*" *Ariz. Laborers, Teamsters, & Cement Masons*, 38 P.3d at 31 (emphasis added). "Interference with a contract between others is not 'improper' when it is a 'bona fide exercise of [a party's] own rights.'" *Calhoun v. Allstate Ins. Holdings LLC*, No. CV-19-04932, 2021 WL 1916838, at *7 (D. Ariz. Apr. 12, 2021) (alteration in original) (quoting *McReynolds v. Short*, 564 P.2d 389, 394 (Ariz. Ct. App. 1977)).

The alleged improper acts here are GoDaddy's breach of the Agreements and breach of the implied covenant. (*See* Doc. 154 at 18.) But, as discussed above, GoDaddy did not breach the Agreements, nor did it breach the implied covenant. In fact, it exercised its rights under the Agreements to lock and suspend the Domain. Because there is no genuine dispute of material fact as to whether GoDaddy breached the Agreements or breached the implied covenant, there is no genuine dispute as to whether it committed an improper act. GoDaddy is thus entitled to summary judgment on the tortious-interference claim.

### IV. Conclusion

GoDaddy is entitled to summary judgment on all claims. The Court need not reach GoDaddy's other arguments for summary judgment, its affirmative defenses, or its request for partial summary judgment on the issue of damages.

**IT IS ORDERED** that GoDaddy's motion for summary judgment (Doc. 146) is **GRANTED**. The Clerk of the Court is directed to enter judgment accordingly and terminate the case.

Dated this 12th day of August, 2025.

Douglas L. Rayes
Senior United States District Judge

cc: Counsel for the parties